# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———

No. 17-40796

———

LAUREN C., by and through her next friend, Tracey K.,

Plaintiff - Appellant

v.

LEWISVILLE INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellee

———

Appeal from the United States District Court
for the Eastern District of Texas

———

United States Court of Appeals
Fifth Circuit

**FILED**

September 14, 2018

Lyle W. Cayce
Clerk

Before DAVIS, HAYNES, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

Lauren C., a young woman with disabilities previously in the Lewisville Independent School District, appeals the district court's decision denying her attorneys' fees under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. While we rely on different grounds, we AFFIRM the district court's judgment that Lauren is not a prevailing party for fee purposes.

The underlying case involves a years-long dispute over whether Lauren should have been diagnosed with autism or intellectual disability and whether that issue should have affected her education program. Unable to resolve the matter with the District, Lauren received a hearing at which an administrative officer heard expert testimony and reviewed Lauren's educational plan. The

No. 17-40796

officer found that Lauren should have been diagnosed with both autism and intellectual disability, but concluded that Lauren's plan was nonetheless appropriate in all respects. The officer ordered the District to review Lauren's plan in light of the autism diagnosis, which the District did. But the District made no changes to Lauren's plan and confirmed the plan had already incorporated various autism strategies, despite lacking a prior autism diagnosis. Neither Lauren's parents nor her counsel offered any suggestions for further altering her plan.

Lauren's parents instead sued the District in federal court, claiming the officer's decision made Lauren a "prevailing party" entitled to attorneys' fees under IDEA. Reviewing the officer's decision, the district court agreed that Lauren's educational plan was entirely proper under IDEA. The court disagreed, however, with the officer's focus on Lauren's specific diagnosis. Instead, the court reasoned that IDEA focuses less on a disabled student's diagnostic label and more on whether the student has been given an appropriate education. The court thus concluded Lauren was not a prevailing party for fee purposes.

Lauren appealed. At oral argument, what was already a complex case became more complicated still: for the first time, Lauren's attorney argued that she had "aged out" of special education eligibility after the 2015-16 school year and that her IDEA case was therefore moot. Consequently, Lauren now asks us to vacate the district court's decision and remand for further consideration of whether she is entitled to fees based on the hearing officer's decision alone.

This we decline to do. We agree with Lauren that her underlying IDEA case became moot after the 2015-16 school year, a full year before the district court's decision. We nonetheless have jurisdiction to resolve the separate issue of whether Lauren is a prevailing party under IDEA, and we do so. Based on our *de novo* review of the well-developed record, we conclude that the hearing

2

No. 17-40796

officer's decision does not make Lauren a prevailing party. One qualifies as a prevailing party under IDEA if a judicial decision materially alters the parties' legal relationship and furthers IDEA's purposes. The officer's limited decision does neither. The decision effected no change to Lauren's educational plan, which the officer agreed was entirely appropriate despite lacking a prior autism diagnosis. And IDEA focuses, not on a student's diagnostic label, but on whether the student receives appropriate education services, which the officer found Lauren had received from the District.

## I.

## A.

Lauren C. is a young woman with disabilities who lives with her mother, Tracey K., in Lewisville, Texas. At the time of the administrative due process hearing below, Lauren was twenty-one years old and attended school in the Lewisville Independent School District ("LISD" or "District").

As Lauren's resident district, LISD was responsible for providing her a Free Appropriate Public Education (or FAPE) under IDEA. IDEA is a federal law under which states, in exchange for federal funds, "pledge to ensure '[a] [FAPE] is available to all children with disabilities residing in the State between the ages of 3 and 21[.]'" *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 309 (5th Cir. 2017) (quoting 20 U.S.C. § 1412(a)(1)(A)) (brackets added)[1]; *see generally Endrew F. v. Douglas Cty. Sch. Dist.*, __ U.S. __, 137 S. Ct. 988, 993-94 (2017). A FAPE encompasses special education and related services provided "in conformity with [the child's] individualized education program"—or IEP—a comprehensive plan prepared collaboratively by a team including

---

[1] IDEA cases involve numerous acronyms, like "IDEA," "FAPE," "IEP," etc. For the sake of concision, this opinion replaces full terms (*e.g.*, "Free Appropriate Public Education") with acronyms in brackets (*e.g.*, "[FAPE]"). Unless otherwise noted, the reader should assume that brackets in quotations have been added.

No. 17-40796

the child's parents, teachers, and school officials. 20 U.S.C. §§ 1401(9)(D); 1414(d)(1)(A), (B); *see also Endrew F.*, 137 S. Ct. at 994. "The IEP is 'the centerpiece of the statute's education delivery system for disabled children,'" *id.* (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)), and "the means by which special education and related services are 'tailored to the unique needs' of a particular child." *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176 (1982)).

Lauren first attended school in LISD in 1998, when she was in preschool. Over the next fifteen years, Lauren was evaluated many times both by District multidisciplinary teams and by private physicians. The LISD teams—conducting assessments known as a "Full and Individual Evaluation" (or FIE), *see* 20 U.S.C. § 1414(a)-(c)—consistently found Lauren to meet the diagnostic criteria for intellectual disability and speech impairment, but not autism.[2] By contrast, the private physicians hired by Lauren's parents found Lauren to meet the autism criteria. For instance, in 2002 Lauren's physician, Dr. Denise Wooten, diagnosed her with "autism and mild-to-moderate mental retardation."

On March 26, 2013, Lauren's Admission, Review, and Dismissal (ARD) committee met to develop Lauren's annual IEP. *See, e.g., Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997) (explaining that "[i]n Texas, the persons charged with preparing an IEP are known collectively as an … [ARD Committee]"). In its evaluation, the committee declined to accept Dr. Wooten's autism diagnosis, concluding instead that Lauren continued to meet the criteria for intellectual disability and speech

---

[2] The record reflects that Lauren received FIEs in 2002, 2005, 2010, and 2013 from LISD teams consisting of professionals such as licensed psychologists, speech language pathologists, occupational therapists, and student evaluation specialists.

4

impairment. According to the notes of the committee deliberations, Lauren's mother and stepfather disagreed concerning the autism diagnosis, but they broadly supported the committee's recommendations in all other respects. They "expressed agreement with the proposed IEP goals, accommodations, and schedule of services and had no concerns or disagreement with the program as proposed." They also "clarified that [they] were not concerned with the [a]utism supplement and [that] their goal was not to obtain any additional services from the school system, but wanted the [a]utism supplement added in order to ensure optimal services from [the Department of Assistive and Rehabilitative Services], [Supplemental Security Income], and other agencies in the future."

Disagreement persisted over the autism diagnosis, however. Consequently, Lauren's parents requested an "Independent Educational Evaluation" (or IEE), which was conducted by Dr. Kim Johnson on August 17, 2013. *See, e.g., Seth B. v. Orleans Parish Sch. Bd.*, 810 F.3d 961, 965 (5th Cir. 2016) (explaining IDEA "afford[s] the parents of a child with a disability the right to an … [IEE] at public expense") (citing 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502). Like Dr. Wooten, Dr. Johnson diagnosed Lauren with "moderate mental retardation" (or intellectual disability) and autism, but nonetheless concluded her report with this endorsement of the District's IEP:

> After review of the recent IEP in February 2013, the LISD evaluation team completed a comprehensive evaluation with very appropriate recommendations to address Lauren's intellectual, social, behavioral, speech-related, and occupational therapy-related delays—these cannot be currently improved upon and space will not be wasted in this report merely to repeat them here. Likewise, [Lauren's mother] made no complaint about the type and quality of services provided by the District; rather, her concern was over the diagnostic label.

The ARD committee declined to accept Dr. Johnson's diagnosis, and in subsequent meetings held to its view that Lauren did not qualify as a student

with autism. Nonetheless, on April 3, 2014, the District agreed to Lauren's request for additional IEEs in various other areas.

At a meeting on May 21, 2014, the ARD committee developed an IEP for Lauren that included occupational therapy, adaptive physical education, speech, transportation, parent training, and assistive technology. The committee concluded that "[d]ue to Lauren's disability she required Special Education services and support in a Special Education setting for a majority of the day"; observed that "Lauren has successfully met academic requirements for the minimum graduation plan"; and explained that "Lauren requires continued support in the areas of independent living, vocational training, employment options, and money management." Lauren's parents were represented at the meeting by counsel, who reiterated her parents' disagreement with the committee's diagnosis of Lauren's disability. Counsel did not communicate any specific reservation about the IEP, but stated he would disagree with the committee so that he could confer with his clients.

### B.

On August 21, 2014, Lauren's parents requested a due process hearing under IDEA. *See, e.g., Alief Indep. Sch. Dist. v. C.C.*, 655 F.3d 412, 414 (5th Cir. 2011) (explaining that "[i]f parents believe their child's IEP is inappropriate, they may request an administrative 'impartial due process hearing'") (citing 20 U.S.C. § 1415(f)). Their request alleged that LISD (1) failed to identify all of Lauren's disabilities under the Child Find provision of IDEA, (2) failed to provide Lauren with an appropriate IEP, and (3) and failed to provide Lauren with a FAPE. The District counterclaimed, arguing that its FIE of Lauren met all IDEA requirements and that her parents were therefore not entitled to an additional IEE at public expense. The hearing was held in Lewisville before a Special Education Hearing Officer (SEHO) on April 22-23, 2015, with both parties represented by counsel. *See, e.g., Alief*, 655 F.3d at 414

No. 17-40796

(noting, "[i]n Texas, IEP impartial due process hearings are conducted by the Texas Education Agency") (citing 19 TEX. ADMIN. CODE § 89.1151(b)).

The SEHO ruled on June 22, 2015. He first considered the Child Find provision, requiring a state plan to ensure that all resident disabled children needing special education are "identified, located, and evaluated and a practical method … developed … to determine" whether they are receiving required services. 20 U.S.C. § 1412(a)(3)(A); *see also, e.g., Woody*, 865 F.3d at 312-13 (discussing Child Find). Assessing competing expert evaluations, the SEHO determined that Lauren's diagnosis should have been "comorbidity of autism and [intellectual disability]" instead of "intellectual disability and speech impediment." He thus concluded that LISD had violated Child Find by not properly identifying Lauren's disabilities.

On the remaining issues, however, the SEHO found for the District. For instance, he found that "the District's FIE and IEE appropriately addressed all requirements for a sufficient evaluation of [Lauren]" and consequently denied Lauren's request for an additional IEE. He also found that "[Lauren's] parents were NOT denied a meaningful process in her [ARD] committee meetings," and that they "brought forth no probative evidence to support the allegation that [they] were denied meaningful participation in the process" (capitalization in original). Finally, applying this Circuit's four-factor test, the SEHO concluded that "[t]he IEP adopted by the District's ARD committee provided [Lauren] with [a] FAPE" (brackets added); *see, e.g., Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 293 (5th Cir. 2009) (discussing four-factor test for evaluating IEP from *Michael F.*, 118 F.3d at 253). Specifically, he found that Lauren's program was "individualized, administered in the least restrictive environment, [and] provided in a coordinated and collaborative manner for all stakeholders, and [that] positive benefits have been shown in academic and nonacademic areas." The SEHO emphasized that LISD's failure to diagnose

Lauren with autism did not impact her program's validity. He found that, "[a]lthough the District did not diagnose [Lauren] with autism, the District nonetheless addressed [her] disability needs in her IEP without regard to her diagnosis," and, further, that "[Lauren's] IEP is appropriate in all areas … despite the fact that it is not tied to a diagnosis of autism."

Accordingly, the SEHO denied Lauren all the specific relief she requested. However, he did order that "an ARD committee be convened and an appropriate IEP be developed with autism added as a disability addressed." The ARD committee thus convened on September 4, 2015, and added autism eligibility and the autism supplement to Lauren's plan. *See* 19 TEX. ADMIN. CODE § 89.1055(e)(1)-(11) (listing autism strategies). The committee noted, however, that "these additions do not change any services or supports contained in Lauren's current IEP[.]" Lauren's parents offered no suggestions for adding to or altering her IEP, and they left the meeting without agreeing or disagreeing with the committee's decision.

## C.

On July 21, 2015, Lauren filed a complaint in federal district court seeking attorneys' fees as the "prevailing party" in the administrative hearing. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I) (permitting a district court in its discretion, to award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability"); *see also D.G. v. New Caney Indep. Sch. Dist.*, 806 F.3d 310, 312-13 (5th Cir. 2015) (describing genesis of IDEA fee-shifting provision). She alleged prevailing party status based on the SEHO's ruling that the District misdiagnosed her, claiming the ruling provided her the "significant … benefit" that "LISD develop an IEP which recognizes and addresses her disability of autism." On September 18, 2015, the District filed an answer and counterclaim, which included an appeal of the SEHO's decision that it had misdiagnosed Lauren and thereby violated Child Find. On October 9, 2015,

No. 17-40796

Lauren filed an amended complaint and an answer to LISD's counterclaim, alleging that the SEHO erred in finding that the District's FIE was appropriate and that the District had provided her a FAPE. Both parties eventually[3] filed cross-motions for judgment on the administrative record.

On June 29, 2017, the district court granted LISD's motion and denied Lauren's motion. Reviewing the hearing officer's decision under the "virtually *de novo*" standard, *see Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003), the district court concluded that the SEHO had erred in determining the District had violated Child Find but had correctly determined the District had provided Lauren a FAPE.

As to Child Find, the court reasoned that, after receiving notice that Lauren likely had a disability requiring special education, the District evaluated Lauren "on multiple occasions for autism," thus "compl[ying] with its Child Find obligations." Failing to diagnose Lauren with autism did not *ipso facto* violate Child Find because, as the court explained, IDEA itself specifies that "[n]othing in this chapter requires that children be classified by their disability," provided a qualifying child "is regarded as a child with a disability under this subchapter." 20 U.S.C. § 1412(a)(3)(B). The court pointed out that various courts have thus interpreted IDEA not to require "classify[ing] a student into a particular category," but only the provision of "an appropriate education." *See, e.g., Fort Osage R-1 Sch. Dist. v. Sims*, 641 F.3d 996, 1004 (8th Cir. 2011) (explaining "the particular disability diagnosis affixed to a child in

---

[3] LISD also moved for partial dismissal of Lauren's amended complaint based on the 90-day time bar for challenging an administrative decision. *See* 20 U.S.C. § 1415(i)(2)(A), (B) (providing a party aggrieved by a due process decision may bring a civil action challenging it within "90 days from the date of the decision"). While agreeing that Lauren's challenge to the SEHO's decision was time-barred "as an appeal on her own behalf," the district court allowed the challenge to proceed as "a defense to LISD's assertion that the SEHO's decision was [erroneous]." LISD challenges this ruling on appeal and urges that Lauren's challenge to the SEHO's decision is barred, but given our resolution of the case we need not consider the issue.

a [IEP] will, in many cases, be substantively immaterial because the [IEP] will be tailored to the child's specific needs"). The district court thus concluded that "[a] specific classification or label is not required as part of the Child Find obligations or as part of the IDEA itself"; rather, "[t]he relevant inquiry is whether [Lauren] received a [FAPE]."

Turning to that issue, the district court agreed that the District had provided Lauren a FAPE. Like the hearing officer, the court concluded that Lauren's IEP satisfied this Circuit's four-part analysis. *See Michael F.*, 118 F.3d at 253. Notably, the court found that "LISD developed a program specifically individualized to address [Lauren's] needs," and that the Lauren's IEPs "incorporated the autism supplement and [Applied Behavioral Analysis] therapy methodologies even though the LISD did not diagnose [Lauren] with autism." The court therefore concluded that the IEP "was reasonably calculated to enable [Lauren] to receive meaningful educational benefits and thus provided her with a [FAPE]." As the court pointed out, its analysis necessarily meant that the SEHO erred by ordering the ARD committee to convene and add autism as a disability to Lauren's IEP. But this relief was immaterial because, as the court had explained, "the LISD considered the autism supplement and ABA therapy in preparing [Lauren's] [IEPs] and did not have to make additional changes to … [the IEP] after adding autism eligibility for [Lauren's] special education."

Finally, the district court turned to the original impetus for Lauren's lawsuit—whether she was entitled to attorneys' fees as a prevailing party in the due process hearing. The court concluded that Lauren was not a prevailing party given its conclusions that "the LISD complied with its Child Find obligations and provided [Lauren] a [FAPE]." The court therefore denied Lauren attorneys' fees.

No. 17-40796

Lauren timely appealed. In her appellate briefing she argues that, given its failure to diagnose her with autism, the District violated Child Find, failed to tailor her IEP, and failed to provide her a FAPE. She thus asks us to reverse, render judgment in her favor, and remand for consideration of her fee request. But at oral argument, Lauren's arguments dramatically changed course. For the first time, her attorney asserted that the underlying IDEA case is moot, because Lauren "aged out" of eligibility for special education services at the end of the 2015-16 school year. Consequently, Lauren now asks us to vacate the district court's ruling and remand for consideration of her eligibility for attorneys' fees in light of the SEHO's ruling alone.

## II.

Whether one is a prevailing party entitled to attorneys' fees under IDEA is a legal question we review *de novo. Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 206 (5th Cir. 2011) (citing *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422-23 (5th Cir. 2009)). Whether a case is moot is a jurisdictional issue a party can raise for the first time on appeal. *Brindson v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017) (citing *Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 204 (5th Cir. 2010)). Even had it not been raised, we would be "obliged to raise the subject of mootness *sua sponte." Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987).

## III.

### A.

"We must address the issue of mootness first, because to qualify as a case for federal court adjudication, a case or controversy must exist at all stages of the litigation." *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Engineers*, 217 F.3d 393, 396 (5th Cir. 2000) (citation omitted). After the late-breaking invocation of mootness by Lauren's counsel, we asked the parties to submit supplemental briefs, which they have done.

11

No. 17-40796

Lauren's brief asserts she had turned 22 by the end of the 2015-16 school year and so had "aged out" of special education eligibility at that point.[4] She thus claims "[a]ll merits issues"—meaning Child Find and FAPE—were mooted in June 2016, "at least a year before the district court reached [its] decision" in June 2017, and that we must therefore vacate the district court's decision and remand for consideration of attorneys' fees. Relying principally on our decision in *Doe v. Marshall*, 622 F.2d 118 (5th Cir. 1980), she asserts her entitlement to fees is "independent" from the merits and so was not mooted by the expiration of Lauren's eligibility. *See Marshall*, 622 F.2d at 120 (explaining that mootness "neither precludes nor is precluded by an award of attorneys' fees … [which] turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party'") (citations omitted). For its part, LISD does not appear to contest that the merits were mooted by Lauren's turning 22, but it urges us not to allow Lauren to use mootness as a "sword" to wipe out the district court decision and leave it unable to challenge the SEHO's decision. Alternatively, relying on the Seventh Circuit's decision in *Board of Education of Oak Park v. Nathan R.*, 199 F.3d 377 (7th Cir. 2000), LISD argues that a finding of mootness would defeat Lauren's entitlement to attorneys' fees.

We hack through this thicket by applying settled principles of justiciability.

First, we agree with Lauren that the parties' claims regarding Child Find and FAPE became moot when Lauren aged out of eligibility for special education services. As described above, *supra* I.C, those issues entered this case when, in response to Lauren's fee demand, LISD counterclaimed (arguing

---

[4] *See* 19 TEX. ADMIN. CODE § 89.1035(a) (providing "[a]n eligible student receiving special education services who is 21 years of age on September 1 of a school year will be eligible for services *through the end of that school year or until graduation with a regular high school diploma …, whichever comes first*") (emphasis added).

12

the SEHO erred on Child Find) and Lauren amended her complaint (arguing the SEHO erred on FAPE). But there ceased to be an actual controversy between the parties over those matters when Lauren became ineligible for the special education services required by IDEA. *See Honig v. Doe*, 484 U.S. 305, 319 (1988) (holding case was moot because "[r]espondent … is now 24 years old and, accordingly, is no longer entitled to the protections and benefits of the [Education of the Handicapped Act][5], which limits eligibility to disabled children between the ages of 3 and 21"); 20 U.S.C. § 1412(a)(1)(A) (IDEA requires provision of a FAPE to qualifying children "between the ages of 3 and 21").[6] We recognize that a claim for compensatory relief under IDEA may not be mooted by expiration of special education eligibility, but no such claims are presented in Lauren's federal lawsuit. *See, e.g., Pace v. Bogalusa City Sch. Bd.*, 325 F.3d 609, 618 (5th Cir. 2003) (explaining that, "[a]lthough a plaintiff beyond the statutory age of entitlement has no right to seek injunctive relief requiring compliance with IDEA, … he may seek compensation for violation of statutory rights that occurred while he was entitled to them") (citations omitted), *vacated on other grounds by Pace v. Bogalusa City Sch. Bd.*, 339 F.3d 348 (5th Cir. 2003) (granting rehearing en banc); 403 F.3d 272 (5th Cir. 2005) (en banc).[7] Consequently, we conclude that the parties' claims concerning

---

[5] The Education of the Handicapped Act was renamed IDEA in 1990. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 & n.6 (2009).

[6] *See also, e.g., Moseley v. Bd. of Educ. of Albuquerque Pub. Sch.*, 483 F.3d 689, 692-93 (10th Cir. 2007) (holding student's graduation mooted IDEA claims for declaratory and injunctive relief); *Nathan R.*, 199 F.3d at 381 (holding IDEA claims moot because claimant "graduated from high school in 1998, and no action this court might take would affect his or the School's rights"); *Malkentzos v. DeBuono*, 102 F.3d 50, 55 (2nd Cir. 1996) ("The fact that [appellant] is no longer eligible to receive early intervention services renders moot the appellants' challenge" to lower court order requiring provision of weekly educational services and reimbursement of "prospective expenditures" incurred in providing those services.).

[7] In addition to prospective relief, the IDEA authorizes compensatory relief such as reimbursement for private special education expenditures in certain circumstances. *See, e.g., Sch. Comm. of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*, 471 U.S. 359, 369 (1985)

whether the District complied with Child Find and whether the District provided Lauren a FAPE—along with subsidiary issues such as whether Lauren's IEP or FIE were appropriate—were moot at the time of the district court's June 2017 ruling.

Second, we also agree with Lauren that whether she is entitled to attorneys' fees as a prevailing party is a question independent of whether the Child Find and FAPE claims are moot. "We have held repeatedly that 'a determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party.'" *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 471 (5th Cir. 2003) (quoting *Marshall*, 622 F.2d at 120); *see also, e.g., Staley v. Harris Cty., Tex.*, 485 F.3d 305, 314 (5th Cir. 2007) (en banc) (same); *El Paso Indep. Sch. Dist. v. Berry*, 400 Fed. App'x 947, 952, 2010 WL 4459735, at *4 (5th Cir. Nov. 8, 2010) (unpublished) (collecting decisions). We thus reject LISD's argument that the mootness of the underlying merits automatically defeats any entitlement by Lauren to fees. The Seventh Circuit decision the District relies on, *Nathan R.*, stands for the opposite proposition: the court ruled that it could decide a fee issue in an otherwise moot IDEA case because the fee claim was "related solely

(holding IDEA permits reimbursement "if the court ultimately determines that [private] placement, rather than a proposed IEP, is proper under the Act"); *G. v. Fort Bragg Dep. Sch.*, 343 F.3d 295, 308-09 (4th Cir. 2003) (noting several circuits have extended *Burlington* to include "compensatory" educational services "provided prospectively to compensate for a past deficient program") (and collecting decisions). Courts, including a now-vacated panel of our court, have recognized that compensatory claims under IDEA may not be mooted by expiration of special education eligibility. *See, e.g., Pace,* 325 F.3d at 618; *D.F. v. Collingwood Borough Bd. of Ed.*, 694 F.3d 488, 498-99 (3rd Cir. 2012); *Pihl v. Mass. Dep't of Ed.*, 9 F.3d 184, 189-90 (1st Cir. 1993). While Lauren asked the SEHO for equitable compensation and reimbursement (which were both denied), she did not renew those requests in her federal lawsuit. Neither party identifies any compensatory claims that could rescue the Child Find and FAPE claims from mootness.

to the administrative proceedings." 199 F.3d at 381. So too Lauren's fee claim, which depends solely on the SEHO's decision.

Third, Lauren argues that we cannot review the district court's decision on prevailing party status because that decision depended on the resolution of the Child Find and FAPE issues which, as already explained, are moot. This presents a difficult issue, and we find no decision of ours directly on point. *Cf., e.g., Lewis v. Continental Bank Co.*, 474 U.S. 472, 483 (1990) (observing that "[w]hether Continental can be deemed a 'prevailing party' in the District Court, even though its judgment was mooted after being rendered but before the losing party could challenge its validity on appeal, is a question of some difficulty"). Sister circuit decisions suggest that an appellate court cannot review moot merits issues solely to determine whether a party is entitled to prevailing party status for attorneys' fee purposes.[8]

We need not resolve the issue, however. "This Court may affirm on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result." *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1449 (5th Cir. 1992) (citations omitted); *see also, e.g., Gilbert v. Donahoe*, 751 F.3d 303 (5th Cir. 2014) ("Under our precedent, we may affirm on any ground supported by the record, including

---

[8] *See, e.g., Ostby v. Manhattan Sch. Dist.*, 851 F.3d 677, 684-85 (7th Cir. 2017) ("Once a case is moot, we cannot consider the merits of the district court's decision to determine whether the parents are prevailing parties for the purpose of assessing attorneys' fees."); *Nathan R.*, 199 F.3d at 381 (explaining that, "[b]ecause we would need to consider the merits [of a now-moot claim] to determine whether the Parents are prevailing parties, we agree that we cannot decide whether the Parents would be entitled to attorneys' fees from the proceedings in the district court[,]" but holding that "[w]e can still decide whether the Parents' claim for attorneys' fees from the invocation of the stay-put placement is valid because that claim is related solely to the administrative proceedings"); *Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464 (7th Cir. 1996) ("Because this case is moot, we cannot consider the merits of the district court's memorandum opinion and order. To do so would be to issue an advisory opinion solely to determine who prevailed [for attorneys' fee purposes under IDEA].").

No. 17-40796

one not reached by the district court.") (citations and internal quotation marks omitted). The well-developed record permits us to conclude, based on the SEHO's decision alone, that Lauren does not qualify as a prevailing party.

B.

"Under the IDEA, 'a prevailing party is one that attains a remedy that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA." *Richard R.*, 591 F.3d at 421-22 (quoting *Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998)). The remedy must also receive some "judicial imprimatur." *Richard R.*, 591 F.3d at 422. It is settled that "an administrative hearing officer's order provides the requisite 'judicial imprimatur' for a party to be considered a 'prevailing party' for attorneys' fee purposes[.]" *Id.* at 422 n.4 (and collecting authorities). Because Lauren bases her fee claim on the SEHO's decision, she has the necessary imprimatur. We therefore need only consider whether the remedy she received in that decision both altered her legal relationship with LISD and fosters the purposes of IDEA.

As discussed, *supra* I.B, Lauren argued to the SEHO that the District (1) violated Child Find by failing to diagnose her with autism; (2) failed to conduct an appropriate FIE or IEE; (3) denied her parents meaningful process in ARD meetings; and (4) adopted an inappropriate IEP that failed to provide a FAPE. She requested as relief (1) compensatory educational services; (2) an appropriate IEP; (3) reimbursement for private placement if necessary; (4) a "stay-put" order continuing her current placement; and (5) any other relief the SEHO "deem[ed] appropriate." The SEHO ruled for Lauren on one out of four of the issues she presented. Specifically, the SEHO concluded that LISD should have diagnosed Lauren with autism and therefore violated Child Find. However, the SEHO also concluded that—despite Lauren's misdiagnosis—the District properly conducted Lauren's FIE and IEE; allowed her parents

16

meaningful ARD participation; and adopted an IEP that was "appropriate in all areas" and thus provided a FAPE. As a result, the SEHO denied all the relief Lauren specifically requested. The SEHO did order, however, that the ARD committee convene and "an appropriate IEP be developed with autism added as a disability addressed." Accordingly, Lauren's ARD committee convened and considered her existing IEP in light of the strategies listed in the autism supplement, *see* 19 TEX. ADMIN CODE § 89.1055(e)(1)-(11), but made no changes to the IEP. Lauren's parents offered no suggestion for altering her IEP and articulated no reason for disagreeing with the committee's decision.

We hold that the SEHO's order did not make Lauren a prevailing party.

First, we conclude that the SEHO's order did not work a "'*material* alteration'" in Lauren's legal relationship with LISD. *Richard R.*, 591 F.3d at 422 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)) (emphasis added). We have explained in the IDEA context that "'a plaintiff "prevails" when actual relief on the merits of [her] claim materially alters the legal relationship by modifying the defendant's behavior in such a way that directly benefits the plaintiff.'" *Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 468 (5th Cir. 1995) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). It would be difficult to characterize the SEHO's order in those terms. The SEHO ordered only that the ARD committee consider Lauren's existing IEP in light of the autism strategies in the Texas Administrative Code, an exercise which caused no change to Lauren's educational plan. That result is doubly unsurprising: first, the SEHO had already found the IEP "appropriate in all areas … *despite the fact that it [was] not tied to a diagnosis of autism*" (emphasis added), and, second, the evidence showed that the committee had *previously* considered the same educational

strategies and had already implemented several of them in the IEP.[9] We recognize that one "does not need to prevail on every issue to become a prevailing party." *Alief*, 713 F.3d at 270. But here the one issue on which Lauren prevailed (Child Find) resulted solely in an order that *confirmed* the validity of all aspects of her existing educational plan (*i.e.*, her FIEs, her IEEs, and her FAPE), and also effected no change to her IEP, which is "the centerpiece of [IDEA's] education delivery system for disabled children." *Endrew F.*, 137 S. Ct. at 994 (internal quotations and citations omitted). Without minimizing the dispute over Lauren's proper diagnosis, we must conclude that the order here is "the type of 'de minimis' or 'technical victory' that the Supreme Court has found so insignificant as to not create prevailing party status." *Alief*, 713 F.3d at 270 (citing *Garland*, 489 U.S. at 792); *see also, e.g., Salley*, 57 F.3d at 468 (parents were not prevailing parties where student's IEP was appropriate and parents' "sole victory—a finding that [the school] had procedurally violated the Act—did not materially alter the legal relationship between the parties").

We emphasize that a Child Find violation *can* qualify a disabled student as a prevailing party under IDEA. Recently we decided in *Krawietz v. Galveston Independent School District* that a district's six-month delay in identifying a student as disabled violated Child Find, and that the SEHO's resulting order qualified the student's parents as prevailing parties. __ F.3d

---

[9] For instance, Dr. Jennifer Key testified at the due process hearing that "[a]ll aspects of the autism supplement … are also addressed elsewhere in the ARD documentation for all individuals in special education. […] And we very explicitly ensured that that was done for Lauren as well." This is consistent with the ARD committee's deliberations following the SEHO's order: the committee notes reflect that many of the strategies listed in the autism supplement had already been implemented in Lauren's IEP. Finally, although we do not rely on the district court's merits ruling, we note that the court reached the same conclusion: "the LISD considered the autism supplement … in preparing [Lauren's] [IEPs] and did not have to make additional changes to [her] [IEPs] after adding autism eligibility for [Lauren's] special education."

__, 2019 WL 3965619 at *2-3 (5th Cir. Aug. 17, 2018). But, as *Krawietz* noted, the SEHO found the Child Find violation "deprived [the student] of a FAPE" and the SEHO's order—while not granting all requested relief—"was aimed at making sure that [the student] received a FAPE." 2018 WL 3965619 at *2, 3. Specifically, the SEHO ordered the district "to provide equitable and compensatory relief … which included training and counseling for both [the student] and her family and transition services to prepare [the student] for adulthood." *Krawietz v. Galveston Indep. Sch. Dist.*, __ F.Supp.3d __, 2017 WL 1177740, at *7 (S.D. Tex. Mar. 30, 2017). It was thus obvious in *Krawietz* that the SEHO's order "materially altered" the relationship between the parties and obtained something from the district that "directly benefited" the student and her family. *Farrar*, 506 U.S. at 111-12. Here, by contrast, the SEHO's order resulted in no change to Lauren's educational plan and, indeed, recognized that Lauren's IEP was "appropriate in all areas" and already provided her a FAPE.

Second, even assuming the SEHO's order materially altered the parties' legal relationship, it would still fail to qualify Lauren as a prevailing party because the remedy does not foster the IDEA's purposes. "To determine whether particular forms of relief foster the purposes of [IDEA], the critical question is whether a handicapped child receives any appropriate special services necessary to education that the child had not requested prior to the request for a due process hearing." *Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1195 (5th Cir. 1990). The particular relief here was adding an autism diagnosis to Lauren's IEP. As explained, however, doing so effected no change to the IEP. Consequently, that relief did not result in Lauren receiving education services she had not already requested prior to the hearing. *Id.*

Furthermore, the Child Find provision itself suggests that diagnostic labels alone should not be determinative when considering whether a remedy furthers IDEA's purposes. While requiring resident disabled children to be

"identified, located, and evaluated," 20 U.S.C. § 1412(a)(3)(A), Child Find specifies that "[n]othing in this chapter requires that children be *classified by their disability*" provided that each disabled child "is regarded as a child with a disability under this subchapter." *Id.* § 1412(a)(3)(B) (emphasis added). The position that the diagnostic label affixed to a child should determine whether she has prevailed under IDEA "reflects a preoccupation with *labels* that [IDEA] do[es] not share." *Angela L.*, 918 F.2d at 1196 (emphasis in original); *see also id.* (explaining that, "[w]hile [the student] was not *labeled* under the settlement as mentally retarded, she *obtained* in the settlement agreement [remedial] educational services," and was thus a prevailing party) (emphasis in original).

"The IDEA concerns itself not with labels, but with whether a student is receiving a free and appropriate education." *Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1055 (7th Cir. 1997). The order at issue concluded that Lauren's existing plan provided precisely what IDEA promises—a FAPE—regardless of her diagnosis. We conclude that the order's alteration of her diagnosis alone did not confer prevailing party status on Lauren. We do not say that one can never achieve prevailing party status by winning an IDEA dispute over a child's diagnosis. We decide only that the relief here—adding a diagnostic label that effects no change to an already valid special education program—does not confer prevailing party status under IDEA.

## IV.

For the foregoing reasons, we AFFIRM the district court's judgment that Lauren is not a prevailing party for attorneys' fee purposes.