# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2019

Lyle W. Cayce
Clerk

No. 18-31036

MARRIOTT INTERNATIONAL, INCORPORATED; SHERATON OPERATING CORPORATION,

> Plaintiffs - Appellants

v.

DEON DANNA,

> Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-10590

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

Deon Danna signed an arbitration agreement when he accepted employment at a Sheraton in New Orleans. Since the tumultuous end to his employment in 2017, he has not filed any lawsuit against Sheraton. But Sheraton, and its parent Marriott International, filed this lawsuit seeking a declaration that any claims he might file are subject to arbitration. In addition, they apparently contend that the Sheraton arbitration agreement also applies to a state lawsuit that arises out of Danna's prior job at the Ritz Carlton.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-31036

Danna left the Ritz and filed that lawsuit years before going to work at the Sheraton.  The district court dismissed this case for lack of jurisdiction.   We agree and AFFIRM.

I.

In 2010, Danna was fired from his position as director of engineering at the Ritz-Carlton in New Orleans.  Danna believed his termination violated Louisiana's whistleblower laws and was a breach of his employment contract.  So just under a year after he was fired, he sued the Ritz, its parent company (Marriott International), and two of his supervisors in Louisiana state court.

While that suit was pending, Danna started looking for other work.  In 2013, Sheraton hired him as director of engineering at its New Orleans hotel.  When Danna accepted the Sheraton position, he signed an arbitration agreement.  The agreement covered all claims Danna had then or would have in the future, "during or after [his] employment," against Sheraton, its then-parent company Starwood Hotels & Resorts, or their affiliates.  The agreement defined, without limitation, the kinds of claims it reached: those that "ar[ose] out of or [were] related to" his employment offer, the terms and conditions of his employment, pay, benefits, or his potential termination, among other things.

Although Sheraton was not affiliated with Marriott at the time Danna took the job, that changed in 2016 when Marriott purchased Starwood. After that acquisition, things changed for Danna.  Zachary Curry, his former supervisor from the Ritz and one of the defendants in his state court lawsuit, became his direct supervisor at the Sheraton.   This led to Sheraton's discovering that Danna had lied on his employment application in 2013.  He had said he had never been fired—Curry and Marriott, of course, knew otherwise. When he was confronted about this and other alleged inaccuracies, Danna decided to resign.  In a letter to his boss, he explained that after

2

No. 18-31036

Sheraton changed ownership, senior management had been either "hostile" or "stand off-ish" toward him and that he had experienced "great anxiety" given his history with Marriott.

Months before he resigned, Danna had attempted to amend his state court complaint to explain that, given Marriott's and Curry's renewed involvement in his career, the anxiety his termination from the Ritz had caused continued into the present. But the state court did not allow him to amend, so those allegations never became part of that case.

Even though it was unsuccessful, Danna's attempt to amend his state court complaint, along with his resignation letter, seem to have spooked Marriott and Sheraton. Less than two months later, they filed a complaint in federal district court asking that Danna be compelled to arbitrate "any and all claims or disputes that now exist or may hereafter arise in connection with or in any manner relating to" his Sheraton application, employment, or resignation. They then filed a motion to compel arbitration. Danna in turn moved to dismiss the action, arguing that the district court lacked jurisdiction. The district court agreed and dismissed Marriott's and Sheraton's complaint without prejudice reasoning that there was no dispute ripe for adjudication.

Marriott and Sheraton pressed on, requesting leave to amend their complaint. With permission from the district court, they reasserted the allegations in their dismissed complaint and this time sought a declaratory judgment that Danna was precluded from seeking damages from them for any period of time following his voluntary resignation. They also contended that they were entitled to a declaration that any claims Danna brought against them must be arbitrated. The amended complaint was accepted by the district court "provided it cause[d] no interference" with Danna's ongoing state lawsuit.

3

No. 18-31036

But the amended complaint suffered the same fate as the first. The district court held that Marriott and Sheraton did not have standing to pursue declaratory relief and it therefore lacked jurisdiction. They appealed.

All the while, the state court proceedings have continued. The state court dismissed Danna's whistleblower and breach of contract claims against all defendants except for the Ritz; the only claim potentially remaining against Marriott is one for spoliation of evidence. A jury recently ruled in Danna's favor on his breach of contract claim against the Ritz. It awarded him substantial damages. It is unclear whether that verdict has ended the state proceedings—neither party has indicated whether judgment has been entered for or against Marriott on Danna's spoliation claim or whether the parties in that case plan to request a judgment notwithstanding the verdict or a new trial (or whether they will appeal). We, therefore, proceed with our analysis.

## II.

The Federal Arbitration Act, which instructs federal courts to compel arbitration when appropriate, is not an independent grant of federal jurisdiction. So before compelling arbitration, a federal court must ensure that it would, in the absence of an arbitration agreement, have jurisdiction over the underlying substantive action. *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 923 (5th Cir. 2017); *see also* 9 U.S.C. § 4.

Marriott's and Sheraton's shifting focus in their pleadings and appellate briefs make defining the underlying dispute somewhat difficult. There are two ways to construe their submissions. The first is as a request to declare that Danna must arbitrate certain disputes within the state court proceedings. The allegations could also be read as a request for a declaration that any separate, yet-to-be filed action for claims arising from his Sheraton employment is subject to arbitration. Under either reading, however, jurisdiction is lacking.

4

No. 18-31036

That Marriott and Sheraton seek a declaratory judgment does not relieve them of the burden to show that this court has jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). That is because the Declaratory Judgment Act, which allows the federal courts to issue declaratory relief, "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). In other words, it gives us permission to order an additional remedy, but it does not expand our jurisdiction. Charles A. Wright, et al., 10B FEDERAL PRACTICE & PROCEDURE § 2766 (4th ed. 2018). The constitutional limit on our jurisdiction to actual "cases" or "controversies" means that the traditional ingredients of standing must still be present. *Id.*; *see also Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997) (noting that the "actual controversy" required by the Declaratory Judgment Act is "identical to the meaning of 'case or controversy' for the purposes of Article III").

A.

With respect to the first possible reading of Appellants' submissions, we are left scratching our heads. It is not clear what the arbitration would look like if we agreed and compelled it: Which parties and which claims would go to arbitration? There are more questions: Why, at this late date, are Marriott and Sheraton asking to arbitrate an eight-year-old state court action? If they believe some or all of that proceeding should be sent to arbitration, why have they not asked the state court to compel it?

The answer may be that neither Marriott nor Sheraton has much, if anything, at stake in the state action.[1] That lack of concrete interest in the outcome of the state proceeding presents problems for this federal case. *See*

---

[1] In fact, Danna has suggested in a letter to this panel that the recent state verdict renders this federal case moot, which would mean we would be without jurisdiction. *Lauren C. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 371 (5th Cir. 2018) ("Whether a case is moot is a jurisdictional issue."). But because we find jurisdiction is lacking for a different reason, we need not confront this question.

No. 18-31036

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408–09 (2013) (explaining that the federal courts lack jurisdiction over disputes absent an "actual or imminent" injury). It means Marriott and Sheraton do not have standing to seek arbitration of all or part of the long pending state suit. This is self evident for Sheraton. It is not a party to the state court action and thus cannot not be injured by those proceedings, no matter the result.

Marriott is a defendant in the state court lawsuit, but it too lacks standing to compel arbitration of all or part of that action. The only potentially remaining claim against Marriott in the state court is spoliation of evidence. As we have said, we fail to understand why, if Marriott believes that claim is arbitrable,[2] it has not asked the state court to compel arbitration.[3] But it does not focus its arbitration request on the spoliation claims. Instead it wants to arbitrate Danna's pursuit (and receipt) of lost wages from the Ritz as part of his whistleblower and breach of contract claims. We do not see how Marriott suffers because the jury decided the Ritz owes Danna damages.

Marriott and Sheraton try to connect those damages awarded against the Ritz to them, and thus the arbitration agreement signed three years after the Ritz employment ended, by pointing out that the later Sheraton

---

[2] It is far from clear that the spoliation claim is subject to arbitration. The arbitration agreement, entered into after Danna had already filed his state suit, contemplates arbitration of claims related to Danna's employment at the Sheraton. It is hard to imagine how a claim for spoliation of evidence in a case about a different job fits the bill. Indeed, the initial complaint recognized that the agreement extends only to claims "relating to [Danna's Sheraton] application, [his] employment at the [Sheraton], or his resignation or separation therefrom."

[3] And if Marriott and Sheraton have this other route to obtain the relief they seek, it is best we keep our nose out of the state court's business. When a state lawsuit is pending, federal courts are rightly loathe to exercise their discretion to grant declaratory relief that might short-circuit those proceedings. *See Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). To do so would often be "antithetical to the noble principles of federalism and comity." *Id.*

employment may have been a factor in calculating the damages Danna suffered.   But subtracting the salary Danna earned in his post-Ritz employment from what he would have earned had he stayed at the Ritz is the standard lost wages calculation.  *See, e.g.*, 42 U.S.C. § 2000e-5(g)(1) ("Interim earnings or amounts earnable with reasonable diligence . . . shall operate to reduce the back pay otherwise allowable.").  Far from injuring appellants (or even the Ritz), Danna's Sheraton employment *reduced* the damages the Ritz would otherwise owe.[4]   And that would be true of any post-Ritz income, whether it was earned working at the Sheraton, another hotel, or on an offshore rig.  It thus borders on the nonsensical to argue that an employment dispute is subject to arbitration because the plaintiff entered into an arbitration agreement with a future employer whose wages are being used to reduce the lost wages the earlier employer must pay.  But the larger and simpler point is that this is all a question of damages the Ritz owes.  It involves an injury to the Ritz, not to Marriott or Sheraton.

### B.

As to the second possible interpretation of Marriott's and Sheraton's request—that they want a declaration making clear Danna cannot use the courts to bring claims arising out of his employment at the Sheraton—we again lack jurisdiction.[5]  Marriott and Sheraton certainly would be injured if Danna

---

[4] Appellants' theory seems to be that the lies on the application made Danna's Sheraton employment illegitimate, so it should not be considered in calculating damages in the claim against Ritz.  But excluding his Sheraton salary from the lost wages calculation would mean Ritz is on the hook for more damages—there would be nothing to deduct from the salary he would have earned with continued employment at the Ritz.

[5] This is most likely the interpretation Marriott and Sheraton now intend.  In a letter brief filed with this panel they contend that they "have never waived, and have consistently maintained, their right to compel the arbitration of any claims or disputes that arise out [of] Appellee's employment with the" Sheraton.  But that letter also complains about how damages were calculated in the state court, so we remain confused about what it is Marriott and Sheraton want.

filed a suit relating to his employment at the Sheraton. There is no evidence, however, that such a suit has been or will be filed. *Clapper*, 568 U.S. at 410 (explaining that an injury cannot be "premised on a speculative chain of possibilities") (*citing Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). In fact, there are indications one will not be filed. If Danna wanted to bring a lawsuit because he believed the "hostil[ity]" he experienced at the Sheraton rose to the level of a hostile work environment based on a protected status, he would have had to file a complaint with the EEOC within 300 days of his resignation. *See Heath v. Bd. of Supervisors for So. Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 736 n.1 (5th Cir. 2017) (explaining that in Louisiana an employee who feels he has been subjected to a hostile work environment must file a charge with the EEOC within 300 days of the alleged unlawful act). A tort claim under Louisiana law, such as intentional inflection of emotional distress or termination in violation of public policy, must be filed within a year. La. Civ. Code Ann. art. 3492. There is no allegation that Danna has done anything to pursue these federal or state claims even though the limitations period has likely run. Because Sheraton or Marriott have not shown a likelihood they will face future litigation over Danna's employment, they do not have standing to pursue a protective declaratory judgment. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

*** 

Because Marriott and Sheraton have failed to show that the underlying state action injures them or that there is a substantial likelihood they will be sued in a separate action, the federal courts do not have jurisdiction to decide if a declaratory judgment should issue. The district court's judgment is therefore AFFIRMED.