IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-50531

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

v.

LEONARD DUANE GRIFFITH, Also Known as Radar;
MICHAEL CURTIS LEWIS, Also Known as Bones;
MICHAEL NORRIS MARTIN, Also Known as Mikey; and
MALACHI DAVID WREN,

                                        Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH and PRADO, Circuit Judges, and YEAKEL, District Judge.[*]
JERRY E. SMITH, Circuit Judge:

Leonard Griffith, Michael Lewis, Michael Martin, and Malachi Wren appeal the respective sentences for their participation in a conspiracy to distribute methamphetamine. We affirm.

---

[*] District Judge of the Western District of Texas, sitting by designation.

I.

Lewis, Wren, and five others were indicted for engaging in a continuing criminal enterprise ("CCE") involving more than 15,000 grams of a substance or mixture containing methamphetamine in violation of 21 U.S.C. § 848. Additionally, the four defendants and twenty-five others were charged with conspiracy to manufacture, distribute, and possess with intent to distribute over 500 grams of a substance or mixture containing methamphetamine in violation of 21 U.S.C. § 846. At trial, the government tried to prove a large methamphetamine conspiracy centered on the Aryan Circle gang.[1] All four defendants were convicted as charged.

Martin and Griffith each objected to his respective presentence investigation report. Martin requested a four-level decrease for being a minimal participant, and Griffith objected to receiving enhancement points for obstruction of justice. The district court sentenced Griffith to 30 years' imprisonment and Martin to 210 months for their respective roles in the conspiracy, after enhancing their offense levels for being leaders of the conspiracy. The court sentenced Lewis and Wren to mandatory terms of life imprisonment pursuant to the CCE conviction.

Defendants appealed. Martin and Griffith appealed only the leadership enhancements of their sentences. We reversed the convictions of Lewis and Wren on the CCE charge and the leadership enhancements to Griffith's and Martin's sentences and remanded for re-sentencing. Lewis, 476 F.3d at 391.

At re-sentencing, defendants asked for a four- or two-level decrease to

---

[1] "The Aryan Circle is a prison-based organization with a white-supremacist ideology. Its members are, in theory, ranked according to a militaristic hierarchy; membership may be maintained inside and outside prison, though rank does not necessarily carry over from one realm into the other." United States v. Lewis, 476 F.3d 369, 375 (5th Cir.), cert. denied, 127 S. Ct. 2893 (2007).

their offense levels for being minimal or minor participants. Griffith re-raised his objection to the two-level enhancement for obstruction of justice. The district court rejected the objections for two reasons: It reasoned, first, that the mandate rule, or law of the case doctrine, precluded defendants from raising their objections at re-sentencing and second, that even if the mandate rule did not apply, defendants had not met their burdens of proof. The court sentenced Lewis and Wren to 360 months each, Griffith to 262 months, and Martin to 168 months.

## II.

Defendants object to the district court's application of the mandate rule to their objections regarding their request for a decrease for minimal or minor participant. We review a district court's interpretation of a remand order, including whether the mandate rule forecloses any of the district court's action on remand, de novo. United States v. Elizondo, 475 F.3d 692, 695 (5th Cir.), cert. denied, 127 S. Ct. 1865 (2007).

On remand, the only issues properly before the district court were those that arose from the remand. United States v. Lee, 358 F.3d 315, 323 (5th Cir. 2004). "All other issues not arising out of this court's ruling and not raised in the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below." Id. It follows that an objection to a sentence must be appealed for the district court, on remand, to have authority to revisit it.

## A.

Martin and Griffith challenge the district court's refusal to entertain their arguments that they were entitled four- or two-level decreases pursuant to U.S.S.G. § 3B1.2 (2004) for being either a minimal or minor participant. Additionally, Griffith argues the court erred in refusing to entertain his objection to

his two-level enhancement for obstruction of justice, imposed pursuant to § 3C1.1 (2004). These arguments are waived.

Martin's request for a decrease and Griffith's objection to the enhancement for obstruction of justice fit squarely within the waiver doctrine announced in Lee. Neither defendant has demonstrated why he was unable to appeal his issue in the initial appeal. Each did appeal the leadership enhancements, which we reversed. See Lewis, 476 F.3d at 391. It does not follow that because they appealed one aspect of the sentence, they preserved every other objection for review on remand. In fact, because they had already objected in the district court on those very grounds, they had every incentive and opportunity to appeal the sentence on those grounds as well. Because they did not, the arguments are waived.

Griffith's argument concerning his right to a minimal or minor role decrease also fails, but it is a more complicated issue. It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument. United States v. Thibodeaux, 211 F.3d 910, 912 (5th Cir. 2000). There is no doubt that in the first appeal Griffith waived the issue of a decrease for his limited participation in the conspiracy, because he did not raise it in that court. The issue is deemed waived on this appeal as well, unless "there was no reason to raise it in the initial appeal." Lee, 358 F.3d at 324.

There were certainly reasons to raise the issue of a decrease in the initial appeal. First, objections to the sentence should extend not only to any enhancements the district court imposes, but also to any decreases the defendant believes he deserves. The point is to get the sentence correct the first time. A different problem might arise if a defendant were forced to take one of two mutually exclusive positions such that our decision breathed new life into one of those positions. See United States v. Whren, 111 F.3d 956, 960 (D.C. Cir. 1997). There is nothing in our reversal of the leadership enhancement that specifically breathes life into this question, however, because the issues are not mutually

exclusive.

Secondly, it should have been apparent to Griffith that he could request a decrease to his offense level; indeed, his co-defendant Martin had already done so. The mandate rule therefore foreclosed Griffith's request for a decrease to his offense level at re-sentencing.

The arguments presented by Martin and Griffith are waived according to the mandate rule announced in Lee. For this reason, we do not reach their second claim that the district court was clearly erroneous in reaching the conclusion it did. See Lee, 358 F.3d at 323 ("[T]he re-sentencing court can consider whatever this court directsSSno more, no less.").

## B.

The mandate rule does not preclude Wren and Lewis from requesting decreases in their sentences, pursuant to U.S.S.G. § 3B1.2 (2004), for their alleged limited participation in the conspiracy. As we noted in our original opinion, the district court ordered no sentence for Wren and Lewis's conspiracy conviction, because conspiracy is a lesser included offense of CCE. Lewis, 476 F.3d at 376. CCE carries a mandatory life sentence. Wren and Lewis challenged their CCE convictions, and Wren challenged his conspiracy conviction in this court. We vacated the CCE convictions, and on remand the district court sentenced them for their participation in the conspiracy.

The district court erroneously concluded that the mandate rule precluded defendants from raising objections to their conspiracy sentences for minor or minimal participation. In Lee, we reaffirmed "the principle that 'whether a [party] waived an issue for consideration at re-sentencing [depends on] whether the party had [sufficient] incentive to raise th[at] issue in the prior proceedings." Lee, 358 F.3d at 324 (brackets in original) (quoting United States v. Hass, 199 F.3d 749, 753 (5th Cir. 1999)).

5

There is no reason to suppose Wren or Lewis had any reason to argue for a decrease in his sentence. At the time of their conviction, they had no sentence to which to object, because they had been sentenced only for their participation in the CCE. Our rule does not require a defendant to object to every possible permutation a case may assume after remand; instead, the rule is based in the proposition that defendants must raise all issues germane to the case as appealed. See Lee, 358 F.3d at 324. Because neither defendant's prospective conspiracy sentences was germane to the original appeal, wholly because there was nothing related to sentencing to appeal, the mandate rule does not apply.

III.

The district court determined, in the alternative, that the defendants had not met their burden of proof that they were substantially less culpable than the average participant in the conspiracy, so it declined to apply § 3B1.2. We consider only Wren and Lewis's contention that they deserved such a reduction because the mandate rule precluded Griffith and Martin from asserting it.

We review a district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error. United States v. Huerta, 182 F.3d 361, 364 (5th Cir. 1999). Unless the factual finding is implausible in light of the record as a whole, it is not clearly erroneous. Id.

The guidelines provide for a four-level decrease if a defendant was a minimal participant in the criminal activity and a two-level decrease if he was a minor participant. U.S.S.G. § 3B1.2 (2004). A minimal-participant adjustment is appropriate for those defendants who "are plainly among the least culpable of those involved." U.S.S.G. § 3B1.2 Application Note 4 (2004). A minor participant adjustment is appropriate for a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 Application Note 5 (2004). The determination is fact-based, U.S.S.G.

§ 3B1.2 Application Note 3 (2004), so we will upset a sentence only if that finding is clearly erroneous. Our inquiry is whether, in light of the whole record, the finding is implausible. Here it is not.

A.

Lewis was aware of the drug conspiracy and had extensive participation in it. For example, he organized the cooking of, and sold, methamphetamine. While incarcerated, he held the rank of captain in the Aryan Circle. Outside of jail, he was a major.

Curtis Perkins testified that Lewis recruited him to participate in the conspiracy and was producing and selling, along with Victor Tucker, ten ounces of methamphetamine a week. Christopher Barrandey testified that he and Lewis started the Odessa chapter of the Aryan Circle and that all members of the Aryan Circle were involved in the production of methamphetamine, such that whoever needed to borrow money or drugs to meet demand could get it from another member of the organization.

Lewis's only counter-argument is that his sentence should be comparable to Griffith's because they played similar roles in the conspiracy. In Lewis, 476 F.3d at 389, we said Griffith's participation in the methamphetamine trade was minor. In that case, however, we were discussing Griffith's participation in light of the district court's organizer-or-leader enhancement and not in view of whether Griffith was entitled to the decrease Lewis requests. Id.

Even if we did determine in Lewis that Griffith's participation was minor as defined in U.S.S.G. § 3B1.2 (2004), that determination would not extend to Lewis. We said there was no evidence that Griffith recruited accomplices, claimed a share of methamphetamine proceeds, or exercised control over others. Lewis, 476 F.3d at 389. As the above evidence demonstrates, there is certainly evidence Lewis did all the above.

B.

Wren likewise claims he deserves a decrease pursuant to § 3B1.2 (2004). He directs our attention to two indications that he did not participate in the conspiracy at the level of the others: first, that there was no evidence that he was a formal member of the Aryan Circle and second, that his name rarely appears in the record without reference to Barrandey. These suggestions are unpersuasive.

It might be the case that the lack of formal membership in an organization could indicate less-than-average participation in the organization's conspiracy, but it is certainly not conclusive. The record indicates that Wren participated in various skirmishes, stole methamphetamine precursors, and cooked and sold methamphetamine, all on behalf of the Aryan Circle. His only income came from that participation.

Barrandey testified that he and Wren cooked one and one-half ounces of methamphetamine every other day for three months. Barrandey also referred to Wren as his right hand man. Though this testimony might indicate Wren was Barrandey's inferior in the conspiracy, the close relationship could also indicate that they were equals. It was therefore not clearly erroneous to determine that Wren was undeserving of a decrease in his offense level for his particular participation in the conspiracy.

AFFIRMED.