# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 26, 2012

No. 11-20206

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

STEVEN T. CARR,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CR-197-2

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Steven T. Carr was convicted by a jury of one count of conspiring to interfere with interstate commerce by robbery and one count of aiding and abetting a robbery that interfered with interstate commerce, in violation of 18 U.S.C. § 1951 – the Hobbs Act. On appeal, he asserts that the Hobbs Act is unconstitutional as applied to his conduct, his sentence is improper, and he was denied a fair trial because the jurors saw him in handcuffs and prison clothing. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20206

FACTS

This case arises from a dispute over the international shipment of scrap metal. A broker and two groups of buyers of scrap metal were in India. Two other brokers in Houston, Texas, a buyer/broker in Florida, and the company that actually owned the scrap metal in New Jersey, had roles in the transaction.

One of the businesses, BNP Imports, located in Houston, was owned by Gope Pagarani. He was the victim in the crime underlying this Hobbs Act prosecution. Pagarani operated a scrap metal yard in Houston and also was a broker. He was hired by a scrap metal broker in India to assist in completing a purchase of metal located in a New Jersey yard owned by Trenton Iron and Metals. Pagarani had an established business relationship with the companies for whom the broker in India worked. Another Houston broker, Osaka Metals, had already purchased the scrap metal from Trenton and reached an agreement on its sale with the Indian broker. Osaka had not been informed, though, of the identity of the companies for whom the broker worked. Pagarani testified that he was hired to keep the identities secret.

To maintain that secrecy, Pagarani would use his company's established line of credit with Wells Fargo, a federally-insured bank. Using this line of credit as well as some of its own money, Pagarani purchased $497,000 of scrap metal from Osaka. Shortly after this purchase, Pagarani was contacted by Alfa Metals, a Florida firm. Alfa also wanted to buy scrap metal for a buyer in India. It paid Pagarani approximately $270,000 for a portion of the scrap metal it was buying from Osaka.

The scrap metal itself remained in New Jersey. Pagarani went to inspect the metal early in the negotiations and found it to be acceptable. Once all the agreements were finalized among the different parties, the scrap metal was supposedly shipped from New Jersey to India in 81 containers. Of those, 31

2

No. 11-20206

containers went to the buyers for whom Alfa had contracted. Upon arrival in India, it was discovered that the containers held only landfill garbage.

Pagarani was told that the buyers in India would not pay anyone until they received the scrap metal. Pagarani traveled to New Jersey to meet with Alfa and Trenton Iron representatives. Trenton said it would look into the problem but made no commitments. Alfa, represented by Carr and another individual, demanded a full and immediate refund from Pagarani. The latter agreed to refund the money but explained that he could not do so until he had himself received a refund. Pagarani returned to Texas without paying.

Two weeks later, Carr traveled from New Jersey to Houston to press his demand. Carr did so forcefully, ambushing Pagarani in his office. For over four hours, Carr and another man threatened Pagarani and struck him multiple times. Eventually, Pagarani wrote six checks. Five were made out to Alfa and served as a refund. The sixth, for $25,000, was payable to Carr personally. He demanded the payment as the equivalent of a collection fee.

Carr immediately cashed his check. Due to insufficient funds remaining in the account, the remaining checks were cancelled. A refund was then made via wire transfer, relying on the line of credit extended to BNP by the federally-insured bank.

A few days later, Pagarani reported these events to the FBI. Following an investigation, a federal grand jury returned a two-count indictment against Carr. He was tried before a jury in the United States District Court in the Southern District of Texas. After a three-day trial, the jury found Carr guilty of both counts. The district court sentenced Carr to concurrent terms of 87 months imprisonment and three years of supervised release. He was also ordered to pay $175,000 in restitution. This appeal followed.

3

No. 11-20206

## DISCUSSION

Carr argues that the Hobbs Act, 18 U.S.C. § 1951, is unconstitutional as applied to him because the government did not prove that Congress can regulate his conduct under the powers granted to it by the Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3. He positions his argument as an attack on the sufficiency of the evidence. Because he did not preserve a challenge to the sufficiency of the evidence by moving for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a) or (c), we review for plain error. *United States v. Morganfield*, 501 F.3d 453, 461 (5th Cir. 2007). His conviction will be reversed only to prevent a "manifest miscarriage of justice." *Id.* (quotation marks and citation omitted). This standard is not met unless "the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense that is so tenuous that a conviction would be shocking." *United States v. Dowl*, 619 F.3d 494, 500 (5th Cir. 2010) (quotation marks and citation omitted). "In reviewing the record, this Court must consider all the evidence, direct and circumstantial, in the light most favorable to the jury's verdict, accepting all reasonable inferences and credibility choices in favor of that verdict." *United States v. Griffin*, 324 F.3d 330, 356 (5th Cir. 2003) (quotation marks and citation omitted).

A person violates the Hobbs Act if he (1) robs, extorts, or attempts or conspires to rob or extort; and (2) the conduct interferes with interstate commerce. *United States v. Robinson*, 119 F.3d 1205, 1212 (5th Cir. 1997). Carr challenges only the second element.

Carr argues the government failed to prove that the aggregation of other conduct similar to his own, namely violent robbery, would have a substantial effect on interstate commerce. The aggregation principle is important when conduct impedes commerce that is purely local. *See id.* at 1208. That principle is not important here. Evidence admitted at trial showed that Carr robbed and assaulted Pagarani in Houston, who had brokered a commercial trade involving

4

No. 11-20206

companies in Florida, New Jersey, Texas, and India. Carr's assault and robbery not only scuttled any attempt to salvage the transaction, but also caused BNP to draw on its line of credit with a federally-insured bank.

The record is not devoid of evidence of guilt. Nor are we shocked by the jury's decision to convict. There was no plain error as to evidentiary sufficiency.

Carr also challenges his concurrent 87-month sentences, asserting that the district court erred in imposing a two-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F) for a threat of death. We review the district court's interpretation of the Guidelines *de novo* and its findings of fact for clear error. *United States v. Olguin*, 643 F.3d 384, 400-01 (5th Cir. 2011).

The enhancement may apply even when the death threat is not express. U.S.S.G. § 2B3.1 cmt. n.6. According to the trial testimony, Carr held a deadbolt lock to Pagarani's head and threatened to break his head with it. Carr also advised Pagarani that he would not be going home that night if he did not give him the money. Although Pagarani's wife sent the police away from the office during the assault, she explained she did so because Carr and his partner had intimated knowing where they lived. She feared they would return to their home later that night, angry because of the police intervention. The district court's conclusion that Carr's statements on the night of the robbery rose to the level of a threat of death is not "implausible in light of the record as a whole." *United States v. Griffith*, 522 F.3d 607, 611-12 (5th Cir. 2008).

In his final ground for relief, Carr contends that his conviction should be reversed because two jurors witnessed him outside the courtroom wearing jail clothing and handcuffs. As he concedes, he made no objection to the district court, and thus we review for plain error. *See United States v. Montes*, 602 F.3d 381, 386 (5th Cir. 2010). The record does not reflect that this viewing occurred and thus does not establish a clear or obvious error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). In addition, because Carr has not affirmatively

No. 11-20206

shown prejudice arising from this viewing, he is unable to establish a violation of his substantial rights.  *Id.*

Because Carr has failed to show that he is entitled to relief, the judgment of the district court is AFFIRMED.