# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 18, 2025

Lyle W. Cayce
Clerk

No. 23-60333

———————

Olivia Boone, *as next friend* K.A., *A Minor*,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Rankin County Public School District,

*Defendant—Appellee/Cross-Appellant*.

———————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:22-CV-46

———————————————————

Before Stewart, Clement, and Willett, *Circuit Judges*.
Carl E. Stewart, *Circuit Judge*:

Olivia Boone brings this case under the Individuals with Disabilities Education Act (IDEA) on behalf of her autistic son, K.A. In 2020, K.A.'s school district notified Boone that he would be moved to a new program at a different school despite her objections to that plan. Boone filed a complaint with the Mississippi Department of Education alleging that the school district violated the IDEA by unilaterally making that placement decision.

A hearing officer found that the school district violated the IDEA and ordered relief for Boone but denied her request for compensatory educational

services. Boone filed this suit to appeal the hearing officer's denial of compensatory educational services and to seek attorneys' fees. The district court affirmed the hearing officer's decision and held that Boone was entitled to attorneys' fees. Boone timely appealed to this court, and the school district timely cross-appealed. For the following reasons, we AFFIRM.

## I.

### A. Statutory Background

The IDEA is an "ambitious" statute. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399–400 (2017). It "offers States federal funds to assist in educating children with disabilities." *Id.* at 390 (citing 20 U.S.C. § 1400 *et seq.*). In exchange, States must "provide a free appropriate public education . . . to all eligible children." *Id.* (citing 20 U.S.C. § 1412(a)(1)). And States must provide special education and related services to children with disabilities "in conformity with the [child's] individualized education program." *Id.* at 390–91 (quoting 20 U.S.C. § 1401(9)(D)).

An individualized education program is a plan prepared by a child's teachers, school officials, and parents that must be drafted in compliance with a detailed set of procedures. *See id.* at 391. Those procedures "emphasize collaboration among parents and educators and require careful consideration of the child's individual circumstances." *Id.* (citing 20 U.S.C. § 1414). A child's individualized education program ensures that special education and related services are "tailored to the unique needs" of that particular child. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982). The IDEA affords a "basic floor of opportunity" which consists of access to specialized instruction and related services which are "individually designed to provide educational benefit to the [disabled] child." *Id.* at 200–01.

In the event that parents and educators disagree about what a child's individualized education program should contain, they may resolve their differences informally, through a meeting or mediation. 20 U.S.C. § 1415(e), (f)(1)(B)(i). If those measures prove fruitless, the parties may proceed to a "due process hearing" before a state or local educational agency. § 1415(f)(1)(A), (g). And at the conclusion of that administrative process, aggrieved parties may seek redress in court. § 1415(i)(2)(A).

### B. Factual Background

K.A. is a teenage male with severe autism. Since kindergarten, he has received special education through the Rankin County School District (the "School District"). A comprehensive evaluation in early 2014 determined that K.A. was eligible for an individualized education program. Since then, K.A. has struggled academically and developed behavioral problems, including obsessive-compulsive tendencies, aggression, and self-harm.

Like many autistic children, K.A. has suffered with elopement issues—meaning he runs away from safe environments when overwhelmed or overstimulated. When K.A. was 12 years old, he eloped from a classroom at Brandon Elementary School. As punishment, he was suspended. Later, K.A. was placed at Canopy Children's Solutions ("CARES"), a therapeutic school for students with autism, in Jackson, Mississippi. Part of the reason that CARES was selected as an appropriate placement for K.A. was that it was a fenced and locked facility, which could rein in his elopement.

While at CARES, K.A. was reported to be unmanageable and disruptive, with tendencies of running from staff, smearing fecal matter, and physical aggression. According to Principal Maureen Long, K.A. did not make much progress academically at CARES. In fact, K.A. appeared to regress. By age fourteen, K.A. was only functioning at a kindergarten level despite the fact that he was in first grade at seven years old. And his

behavioral issues persisted. On one occasion, during the COVID-19 pandemic, K.A. pulled down his pants and wiped his rear with another student's mask.

A few weeks later, the School District conducted a meeting with K.A.'s individualized education program committee. Boone, Principal Long, K.A.'s teacher, School District specialists, and School District representatives were present at the meeting. The meeting began with positive reports about how K.A. was progressing at CARES. After discussing the reports, the committee informed Boone that it planned to transition K.A. from CARES to Brandon Middle School. And Principal Long stressed that the School District intended for the transition to begin "right away."

Boone ardently opposed the transition and argued that the committee violated a previously-agreed-to plan that would permit K.A. to visit smaller schools over a period of months. The School District, through one of its representatives, responded that "due to the fact that [K.A.]'s residence is in the Brandon zone, he will be placed at Brandon Middle School." Principal Long asserted that K.A. had to be removed from CARES due to his age and the lack of programming to meet his needs at the school. Boone continued to reject K.A.'s transition—noting that Brandon Middle School was too large, did not have appropriate programs for K.A., and would only exacerbate his elopement issues. She pressed that K.A. would need to "go somewhere that's smaller, that's more tailored to what he needs than Brandon." At Boone's request, the committee rescheduled the remainder of the meeting.

The meeting resumed about two weeks later. Boone and Principal Long discussed one of K.A.'s report cards from October of that year, which stated that he was "doing an excellent job," "assum[ing] responsibility for himself," and being "respectful to his peers." Boone expressed that the report was inconsistent with her observation of her son's behavior and that

she was "not buying" that K.A. changed so drastically within a month of wiping his rear with another student's mask. Long dismissed the episode as "just one incident."

Later, a representative for the School District again informed Boone that K.A. would be removed from CARES and returned to his "home school," Brandon Middle School. Boone stressed that K.A. had issues at Brandon Elementary and would "need more than what [Brandon Middle School] can provide." She implored that Florence High School could better accommodate K.A.'s special needs. The representative responded that she had spoken with the School District's Director of Special Education, Amy Bullock, and that "per Amy, [K.A.] is to return to his home school, which is Brandon Middle School." She further told Boone, "if you disagree with the committee's decision, you're welcome to file a complaint." Frustrated, Boone replied that she would file a due process complaint as she attempted to end the meeting.

Before the meeting ended, another School District representative asked Boone what she liked about Florence High School. Boone noted Florence High School's smaller setting and student population, the presence of other children with autism in the classroom, and its vocational programs. She further highlighted that K.A. would have to quickly transition from Brandon Middle School to Brandon High School, whereas he could "be in the same spot" until he was done at Florence High School—stressing that "[K.A.] thrives on routines, like most autistic kids do." Boone also expressed that she was disappointed in Brandon Elementary School's former behavioral-intervention policy, which resulted in K.A. being suspended for eloping. The meeting concluded with the School District informing Boone that it would press ahead with K.A.'s transition from his program at CARES to Brandon Middle School despite her several objections to the plan.

No. 23-60333

*C. Procedural History*

In January 2021, Boone filed a complaint with the Office of Special Education of the Mississippi Department of Education. Boone's suit alleged that the School District violated the IDEA and sought compensatory relief, including an appropriate placement for K.A., academic and related services for him, training for her, and reasonable attorneys' fees. An impartial hearing officer held a hearing over four days in April and July. Afterwards, he determined that the School District violated the IDEA and denied K.A. a free appropriate public education. He concluded that K.A. should receive a new evaluation and an individualized education program consistent with that evaluation. He denied Boone's request for compensatory educational services but expressed his willingness to award her attorneys' fees and ordered the parties to brief the issue.

Unsatisfied, Boone sued the School District in federal court to appeal the hearing officer's denial of compensatory relief and to seek attorneys' fees. The district court affirmed the hearing officer's decision. Boone timely appealed. The School District timely cross-appealed.

## II.

Under 20 U.S.C. § 1415(i)(3)(A), district courts have jurisdiction to review a state hearing officer's decision in an IDEA impartial due process hearing. A district court's review of that decision is "virtually de novo." *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 967 (5th Cir. 2016) (internal quotation marks omitted). The district court must accord "due weight" to the hearing officer's findings, but it must ultimately reach an independent decision based on the preponderance of the evidence. *Id.* at 966 (internal quotation marks omitted).

We review de novo, as a mixed question of law and fact, a district court's decision on whether an individualized education program is

6

appropriate under the IDEA. *See Renee J. ex rel. C.J. v. Hous. Indep. Sch. Dist.*, 913 F.3d 523, 528 (5th Cir. 2019). The party challenging the program has the burden to show why the plan and placement were insufficient under the IDEA. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F.*, 118 F.3d 245, 252 (5th Cir. 1997). Underlying findings of fact—such as the needs of a minor student and whether the student obtained an educational benefit from a school's special education services—are reviewed for clear error. *Id.*; *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 583–85 (5th Cir. 2009). Under clear error review, a factual finding may be reconsidered when, after reviewing all of the evidence, the court is "left with the definite and firm conviction that a mistake has been committed." *Renee J.*, 913 F.3d at 528 (quoting *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City.*, 470 U.S. 564, 574 (1985) (citation omitted).

We review a district court's fee award in an IDEA claim for abuse of discretion with the factual findings reviewed for clear error. *Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 208 (5th Cir. 2011). "An abuse of discretion occurs where the ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002) (internal quotation marks omitted). We review de novo whether a party is a prevailing party under the IDEA. *See El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 423 (5th Cir. 2009).

We have yet to explicitly state the standard by which we review a district court's decision to grant or deny compensatory education. Other circuits employ an abuse of discretion standard. *See Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005); *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994); *Lester H. by*

*Octavia P. v. Gilhool*, 916 F.2d 865, 872 (3rd Cir. 1990). We have acknowledged that compensatory education awards are equitable remedies. *See, e.g.*, *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 F. App'x 958, 964 n.9 (5th Cir. 2020) (per curiam). And "[t]he ultimate exercise of a court's equitable power is reviewed for abuse of discretion." *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 335 (5th Cir. 2019) (citing *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990)). Thus, we review a district court's decision to grant or deny compensatory education for abuse of discretion.

## III.

There are three issues on appeal: (A) whether the district court erred by concluding that the School District denied K.A. a free appropriate public education, (B) whether the district court erred by determining that K.A. was not entitled to compensatory educational services, and (C) whether the district court erred by finding that Boone is entitled to attorneys' fees. We address each of these issues in turn.

### A. Free Appropriate Public Education

The School District argues that the district court erred in concluding that it denied K.A. a free appropriate public education. Boone, on the other hand, argues that the district court correctly held that the School District denied K.A. a free appropriate public education. She contends, however, that the district court erred by failing to hold that Brandon Middle School was not K.A.'s least restrictive environment. We hold that the district court did not err by affirming the hearing officer's determination that the School District denied K.A. a free appropriate public education.

When evaluating whether an individualized education program is reasonably calculated to provide a free appropriate public education under the IDEA, we look to four factors: whether "(1) the program is individualized on the basis of the student's assessment and performance;

(2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *See Michael F.*, 118 F.3d at 253. While we have "never specified precisely how these factors must be weighed," *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 293 (5th Cir. 2009), we have "long held that the fourth factor is critical." *Renee J.*, 913 F.3d at 529. Indeed, an individualized education program "must be likely to produce progress, not regression or trivial educational advancement." *Michael F.*, 118 F.3d at 248 (internal quotation marks omitted).

### 1. Individualization

Beginning with the first factor, the district court correctly concluded that the School District's plan for K.A. was insufficiently individualized to suit his needs. *See id.* As discussed, we review a district court's fact findings as to the needs of a minor student under the IDEA for clear error. *See Juan P.*, 582 F.3d at 583–85. Here, the district court agreed with the hearing officer that K.A.'s individualized education program was insufficiently individualized because it failed to address his propensity to elope and was predetermined without his mother's input.

As to elopement, the School District argued that it had a behavior intervention plan in place for K.A. which addressed elopement, and that all Brandon Middle School staff would have been trained on that plan. But during the administrative hearing, the School District conceded that there was nothing in K.A.'s transition plan to prevent elopement. Indeed, a School District representative plainly testified that "[e]lopement is not addressed in the transition plan from CARES School." Thus, the district court concluded that, in the absence of any contradictory proof, the evidence shows that the School District was aware of the elopement accommodations that

K.A. required but had no plan to implement them until K.A. was at Brandon Middle School. And the district court rejected the School District's argument that there was "little evidence that elopement was a major issue with K.A.," highlighting the evidence of K.A.'s struggles with elopement.

On appeal the School District appears to have abandoned its argument that elopement was not a major issue for K.A. Instead, it resurrects its assertion that it addressed K.A.'s elopement issues in a behavior intervention plan. It implies that this court should disregard the evidence that K.A.'s transition plan contained no measures to prevent elopement because the School District was in the process of developing and revising that plan. But the School District's argument is belied by the record. In the same meeting where Boone learned that the committee planned to send K.A. to Brandon Middle School, Principal Long said that K.A.'s transition would begin "right away"—not after the committee developed a plan to address elopement. And the School District's arguments in the district court suggest that it did not even consider elopement to be a major issue for K.A. Thus, the evidence shows that the district court did not err in finding that the School District's plan failed to adequately address K.A.'s tendencies to elope.[1]

As to predetermination, the School District argues that Boone did not prove the School District predetermined K.A.'s placement. But she did.

---

[1] The School District argues that its failure to consider elopement was a mere procedural violation under the IDEA for which Boone did not prove harm. In doing so, it implies—without citation to any specific authority—that a school district's failure to consider a child's individual safety needs does not impede that child's right to a free appropriate public education. Because the School District failed to adequately cite authority, it forfeited this argument. *Cf. United States v. Upton*, 91 F.3d 677, 684 n.10 (5th Cir. 1996) ("[C]laims made without citation to authority or references to the record are considered abandoned on appeal."); *L & A Contracting Co. v. S. Concrete Servs.*, 17 F.3d 106, 113 (5th Cir. 1994) (holding that a party's failure to cite case law constitutes abandonment).

"Predetermination occurs when the [school district] makes educational decisions too early in the planning process, in a way that deprives the parents of meaningful opportunity to fully participate as equal members of the [individualized education program] team." *E.R. by E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 769 (5th Cir. 2018) (citation omitted). "To avoid a finding of predetermination, there must be evidence that the [school district] has an open mind and might possibly be swayed by the parents' opinions . . . ." *Id.* (citation omitted). Of course, "[t]he right to provide meaningful input" is not the same as "the right to dictate an outcome." *Id.* (citation omitted).

The record supports the district court's conclusion that the School District predetermined K.A.'s placement. As discussed, when Boone was informed that K.A. would be discharged from CARES and sent to Brandon Middle School, she was told that the transition would occur "right away." Moreover, when Boone argued that the newly truncated timeline violated the previously-agreed-to transition plan, a School District representative responded that "due to the fact that [K.A.]'s residence is in the Brandon zone, he will be placed at Brandon Middle School." That response suggests that the School District did not have an "open mind" as to K.A.'s placement. *See id.* This conclusion is buttressed by the School District's concession that Director Bullock decided that "[K.A.] is to return to his home school, which is Brandon Middle School." Indeed, Principal Long later confirmed that Director Bullock—not K.A.'s individualized education program committee—made the decision to transition K.A. to Brandon Middle School.

The School District attempts to evade this reality by arguing that, under the IDEA, parents must be consulted in determining placement but not necessarily "site selection." *White ex rel. White v. Ascension Par. Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003). To be sure, "'[e]ducational placement', as used in the IDEA, means educational program—not the particular

No. 23-60333

institution where that program is implemented." *Id.* (citing *Sherri A.D. v. Kirby*, 975 F.2d 193 (5th Cir. 1992)).

But two things can be true at once. Here, the School District's decision to transfer K.A. from CARES to Brandon Middle School was both a change in site *and* a change in placement under the IDEA. Indeed, Principal Long explicitly stated that K.A. had to be removed from CARES due to his age and the lack of programming to meet his needs. In acknowledging that Brandon Middle School would provide K.A. with different programming than CARES, the School District demonstrated that it contemplated not only a change in site but also in placement.[2] *See id.* Similarly, in proposing Florence High School as an alternative, Boone highlighted the different vocational programs that would be available to K.A. at Florence—showing that she, too, was concerned with placement. Because the record reveals that K.A.'s planned transition from CARES to Brandon Middle School was intertwined with his educational programming, the School District's argument that it was merely a change in site, as opposed to placement, is meritless. *See id.*

For these reasons, the district court did not err in concluding that the School District's plan for K.A. was insufficiently individualized. The plan failed to address his elopement tendencies and was predetermined without Boone's input. Thus, the district court correctly assessed the individualization factor in Boone's favor. *Michael F.*, 118 F.3d at 253.

*2. Least Restrictive Environment*

The district court correctly concluded that Boone failed to prove that Brandon Middle School was not K.A.'s least restrictive environment. *See id.*

---

[2] Throughout this case, Principal Long has explicitly referred to K.A.'s transition from CARES to Brandon Middle School as a change in "placement."

12

Under the IDEA, the least restrictive environment factor denotes not only freedom from restraint, but the freedom of the child to associate with his or her family and able-bodied peers to the maximum extent possible. *See Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 128 n.2 (5th Cir. 1993); *see* 20 U.S.C. § 1412(a)(5). This is sometimes referred to as "mainstreaming." *See Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1044 (5th Cir. 1989). While there is a presumption in favor of mainstreaming children with disabilities, this presumption gives way when a general classroom cannot meet a child's needs. *Id.* (recognizing that some children with disabilities require special education to meet their needs). But "[e]ven in cases in which mainstreaming is not a feasible alternative, there is a statutory preference for serving disabled individuals in the setting which is least restrictive of their liberty and which is near the community in which their families live." *Sherri A.D.*, 975 F.2d at 206.

In *Daniel R.R.*, we provided a flexible, two-part test for determining whether an individualized education program's placement was in a child's least restrictive environment. 874 F.2d at 1048. "First, we ask whether education in the regular classroom, with the use of supplemental aids and services can be achieved satisfactorily for a given child." *Id.* "If it cannot and the school intends to provide special education or to remove the child from regular education, we ask, second, whether the school has mainstreamed the child to the maximum extent appropriate." *Id.* Here, neither party argues that K.A. should be educated in an ordinary classroom, and the parties agree that he requires special education. Thus, in assessing the least restrictive environment factor, we must evaluate whether Boone established that Brandon Middle School is not the setting that would be least restrictive of K.A.'s liberty and would mainstream him to the maximum extent possible. *See Sherri A.D.*, 975 F.2d at 206; *Daniel R.R.*, 874 F.2d at 1048.

She did not. In fact, Boone explicitly acknowledges that she does not attempt to make an argument about the restrictiveness of Brandon Middle School. Instead, the thrust of her argument is that "K.A.'s placement and program at [Brandon Middle School] violates the IDEA's [least restrictive environment] requirement because it is not appropriately tailored to K.A.'s needs." But this argument sounds more in individualization than it does in the IDEA's least restrictive environment requirement. *See Michael F.*, 118 F.3d at 253; *Sherri A.D.*, 975 F.2d at 206; *Daniel R.R.*, 874 F.2d at 1048. Indeed, Boone's arguments that Brandon Middle School put K.A. at greater risk for elopement and that the School District predetermined his placement were considered by the hearing officer and the district court in concluding that the School District failed to individualize K.A.'s transition plan. And Boone's argument that the School District selected Brandon Middle School because it was his "home school" rather than because it met his needs is similarly pertinent to individualization. *See Michael F.*, 118 F.3d at 253. While these facts suggest the School District failed to provide a K.A. a free appropriate public education, Boone fails to make a specific argument under this court's precedents on the least restrictive environment requirement of the IDEA. *Sherri A.D.*, 975 F.2d at 206; *Daniel R.R.*, 874 F.2d at 1048.

Moreover, the district court is correct that evidence of the differences between Brandon Middle School and Florence High School is scarce. To be sure, when asked why she preferred Florence High School, Boone noted its smaller setting, the presence of other children with autism, and its vocational programs. Nonetheless, the district court correctly assessed that the sparse evidence in the record is insufficient to resolve the least restrictive environment factor. And given that Boone explicitly declined to make an argument about the restrictions that K.A. would face at Brandon Middle School, the district court was correct to hold that she did not prove that

14

Brandon Middle School is not K.A.'s least restrictive environment. Thus, it did not err by assessing this factor as neutral. *See Michael F.*, 118 F.3d at 253.

### 3. Coordination and Collaboration

Despite the hearing officer's holding to the contrary, the district court concluded that key stakeholders provided services in a coordinated and collaborative manner. The School District correctly notes that Boone does not challenge this finding on appeal. "It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument." *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008). Thus, this factor weighs in the School District's favor. *See Michael F.*, 118 F.3d at 253.

### 4. Demonstration of Benefits

Turning to the most "critical" *Michael F.* factor, the district court did not clearly err in determining that the School District's plan for K.A. did not demonstrate benefits. *See id.*; *Renee J.*, 913 F.3d at 529. "[T]he essential function of an [individualized education program] is to set out a plan for pursuing academic and functional advancement." *Endrew*, 580 U.S. at 399. Thus, this factor "looks at whether the child received positive academic and non-academic benefits" from their individualized education program. *A.A. v. Northside Indep. Sch. Dist.*, 951 F.3d 678, 691 (5th Cir. 2020). "[T]he progress contemplated by the [individualized education program] must be appropriate in light of the child's circumstances." *Endrew*, 580 U.S. at 399. But "the educational benefit . . . cannot be a mere modicum or *de minimis*." *Michael F.*, 118 F.3d at 248 (citation omitted). Instead, an individualized education program "must be likely to produce progress, not regression or trivial educational advancement." *Id.* (internal quotation marks omitted).

Here, the hearing officer found—and the district court agreed—that K.A. regressed under his individualized education program. Among the evidence the district court considered was: (1) Principal Long's

acknowledgment that K.A. had gone from a seven-year-old at a first-grade level to a fourteen-year-old at a kindergarten level, and (2) Principal Long's subsequent concession that K.A. experienced a grade-level deficit from his original instruction.

The School District argues that this evidence is unpersuasive because the fact that K.A.'s evaluation identified his grade as "first grade" does not mean that he was functioning at a first-grade level. While the School District is correct that it is not necessarily true that K.A. was functioning at a first-grade level because he was in first grade, it provides no evidence or argument that he was actually functioning at some lower level in 2014. Meanwhile, the record contains testimony from Principal Long effectively conceding that K.A. suffered a grade-level decrease over the course of about seven years.

Further, the School District asserts, without citation to the record, that grade-level progress was "not a reasonable prospect" for K.A. In the absence of any evidentiary support, that fatalist conjecture is at odds with the "ambitious" goals of the IDEA and our holding that an individualized education program "must be likely to produce progress, not regression." *See Endrew*, 580 U.S. at 399–400; *Michael F.*, 118 F.3d at 248 (internal quotation marks omitted).

The School District argues that there is testimony from K.A.'s instructors and specialist, as well as evidence in the form of progress reports, indicating that K.A. was making some non-academic progress. But our review of whether K.A. obtained an educational benefit from the School District's special education services is for clear error. *Juan P.*, 582 F.3d at 583–85 (5th Cir. 2009). At best, the School District posits a dueling view of the evidence. That is insufficient to demonstrate clear error. *See Anderson*, 470 U.S. at 574. Because the School District's arguments fail to leave us with "the definite and firm conviction that a mistake has been committed," the

district court did not err in determining that K.A.'s individualized education program did not demonstrate benefits. *See Renee J.*, 913 F.3d at 528; *Michael F.*, 118 F.3d at 253.

*        *        *

In sum, the bulk of the *Michael F.* factors—including the most critical factor—weighs in favor of Boone. *See Renee J.*, 913 F.3d at 528; *Michael F.*, 118 F.3d at 253. Thus, the district court did not err by affirming the hearing officer's holding that the School District denied K.A. a free appropriate public education.

### B. Compensatory Educational Services

Boone argues that the district court abused its discretion in declining her request for compensatory education. We disagree.

Compensatory education awards are equitable remedies commonly sought in IDEA cases. *See Eltalawy*, 816 F. App'x at 964 n.9. They are "designed to provide services prospectively to compensate for a past deficient program." *Spring Branch Indep. Sch. Dist. v. O.W. by Hannah W.*, 961 F.3d 781, 800 (5th Cir. 2020) (internal quotation marks omitted); 20 U.S.C. § 1415(i)(2)(C)(iii) (authorizing courts reviewing a hearing officer's decision to "grant such relief as the court determines is appropriate"). Compensatory education awards "should place children in the position they would have been in but for the violation of the [IDEA]." *Spring Branch*, 961 F.3d at 800 (internal quotation marks omitted). A compensatory award requires a "corresponding finding of an IDEA violation." *Id.* And plaintiffs bear the burden to establish entitlement to compensatory education. *P.P. v. Nw. Indep. Sch. Dist.*, 839 F. App'x 848, 857 (5th Cir. 2020) (per curiam). Courts have "broad discretion" in awarding compensatory education and "equitable considerations are relevant in

fashioning relief." *See Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 374 (1985).

Boone argues that the district court was required to provide the following compensatory educational services in this case:

> (1) a comprehensive evaluation; (2) an [individualized education plan] that includes ABA Therapy, Language Therapy, and Occupational Therapy in a home/community; (3) specially designed instruction for post-secondary skills training; (4) parent/family and staff training on evidence-based practices for working with students with Autism; (5) development of an elopement prevention plan and a crisis response plan; (6) bus transportation; (7) reimbursement for the parent to transport K.A. to and from clinic settings; and (8) extended school year services.

She is incorrect.

Because there is an underlying IDEA violation in this case, the district court could have awarded compensatory education. *See Spring Branch*, 961 F.3d at 800. Instead, the district court chose to limit relief to address Boone's primary concerns throughout this case, including (1) her involvement in K.A.'s individualized education program process, (2) appropriate placement for K.A., and (3) the School District's need for a transition plan tailored to K.A.'s needs—particularly, his tendency to elope.[3] While the additional relief that Boone seeks might be helpful, she cites no authority suggesting that the district court was compelled to provide it.

At bottom, this suit arose from Boone's dissatisfaction with the School District's unilateral decision to change K.A.'s placement, not her more general allegations of K.A.'s regression or inadequate education. Boone

---

[3] Notably, this relief overlaps in part with the broader relief that Boone requests.

has failed to establish that the district court's decision to limit equitable relief to the core issues in this case was "based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Tollett*, 285 F.3d at 363. Thus, the district court did not abuse its discretion by denying Boone's request for compensatory education. *Id.*

### C. Attorneys' Fees

The School District argues that Boone is not entitled to attorneys' fees. It argues that even if she proved that it violated the IDEA, she was not a "prevailing party" because the relief awarded to her by the hearing officer did not materially alter the legal relationship between K.A. and the School District. We disagree.

Under the IDEA, courts have discretion to award attorneys' fees "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). An insignificant, *de minimis*, or technical victory is insufficient to create a prevailing party. *See Lauren C. ex rel. Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 376 (5th Cir. 2018). But one "does not need to prevail on every issue to become a prevailing party." *Alief Indep. Sch. Dist. v. C.C. ex rel. Kenneth C.*, 713 F.3d 268, 270 (5th Cir. 2013). Instead, a prevailing party must merely attain a remedy that "(1) alters the legal relationship between the school district and the . . . child[;] (2) fosters the purposes of the IDEA[;]" and (3) receives some "judicial imprimatur." *Lauren C.*, 904 F.3d at 374 (cleaned up). "[A]n administrative hearing officer's [opinion] provides the requisite 'judicial imprimatur' for a party to be considered a 'prevailing party' for attorneys' fee purposes." *Id.* (quoting *Richard R.*, 591 F.3d at 422 n.4). In *Hensley v. Eckerhart*, the Supreme Court recognized that "plaintiffs may be considered 'prevailing parties' . . . if they succeed on any significant issue in litigation which achieves some of the

benefit the parties sought in bringing suit." 461 U.S. 424, 433 (1983) (citation omitted).

Here, Boone is a prevailing party because she attained a remedy that: (1) alters the legal relationship between the School District and K.A., (2) fosters the purposes of the IDEA, and (3) received judicial imprimatur. *See Lauren C.*, 904 F.3d at 374.

As a preliminary matter, the School District does not contest that the hearing officer's decision fosters the purpose of the IDEA. Nor does it contest the district court's holding that the hearing officer's decision provides the necessary judicial imprimatur. *See Richard R.*, 591 F.3d at 422 n.4. Thus, we need only consider whether the remedy that Boone obtained altered the legal relationship between K.A. and the School District. *See Lauren C.*, 904 F.3d at 374.

It did. The School District argues that most of the relief awarded by the hearing officer only required the parties to "discuss" certain issues. That is incorrect. Beyond discussion, the School District was ordered to: (1) reevaluate K.A., (2) develop a new individualized education program consistent with that reevaluation, (3) modify K.A.'s individualized education program and transition plan in consultation with Boone, and (4) develop a safety plan for K.A. related to elopement prevention and response. These remedies are not merely *de minimis* or technical. *See Lauren C.*, 904 F.3d at 376. Indeed, obtaining this relief was Boone's primary purpose in filing her complaint. In other words, the relief ordered by the hearing officer—and affirmed by the district court—certainly provided Boone "succe[ss] on [a] significant issue in litigation which achieve[d] some of the benefit [she] sought in bringing suit." *Hensley*, 461 U.S. at 433 (citation omitted). Thus, Boone is a prevailing party under the IDEA, and the district court did not err in concluding that she is entitled to reasonable attorneys' fees. *See id.*

No. 23-60333

## **IV.**

For the foregoing reasons, we AFFIRM the district court's judgment in full.